NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES BARNES, : | |
| : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | Civil Action No. 05-3754 (DMC) |
| UBS FINANCIAL SERVICES INC., : | |
| : | |
| Defendant. : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

    This matter comes before the court upon a motion by UBS Financial Services Incorporated ("Defendant") for judgment on the pleadings against James Barnes ("Plaintiff"). Defendant filed this motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Oral argument was not held pursuant to Rule 78 of the Federal Rules of Civil Procedure. After careful consideration of all submissions and for the reasons set forth below, Defendant's motion is **denied**.

I. BACKGROUND

    Defendant is a financial organization that provides its clients with a variety of investment services, including trades with fixed income securities. (Defendant's Brief in Support of its Motion for Judgment on the Pleadings ("Def. Br.") at 3). Fixed income securities includes mortgage backed securities, which are often backed by adjustable rate mortgages ("ARMs") or by fixed rate mortgages. (Plaintiff's Brief in Opposition to Defendants Motion ("Pl. Br.") at 1).

Defendant, who was then PaineWebber, hired Plaintiff on October 12, 1982, to work as a specialist in selling mortgage backed securities to thrift institutions.  (Id.)  At the time Plaintiff began working for Defendant, his main client was Kearny Federal Savings Bank ("Kearny"). (Id.)  Throughout his employment with Defendant, Plaintiff focused the majority of his enegery and attention on the Kearny account.  (Def. Br. at 4).  Plaintiff would contact Kearny and when Kearny, or any other client, placed an order with Defendant, he would call Defendant's trading desk to determine the availability of the client's desired securities.  (Pl. Br. at 2).

At some point during the early part of 2000, employees at the trading desks began telling Plaintiff that AMRs and other mortgage backed securities were unavailable.  (Id.)  Plaintiff alleges he would often receive no response to his security inquiries and was often told that the securities were already sold.  (Id.)  As a result, Kearny began purchasing securities from one of Plaintiff's competitors and on March 13, 2001, Kearny's treasurer informed Plaintiff the bank had purchased $124 million worth of ARMs from four of Plaintiff's competitors.  (Id. at 2-3). Plaintiff reported the news to the head trader and senior salesman on the mortgage backed securities desk in New York and the New Jersey branch manager, Tom Hayden.  (Id. at 3).  Over the course of 2001, Plaintiff had many discussions with Defendant's various managers regarding his inability to obtain the desired securities.  (Id.)  Despite his efforts, Plaintiff claims he was only able to fill two orders for ARMs that year.  (Id.)

Plaintiff continued to meet with different managers to discuss his problem.  On May 17, 2003, Plaintiff submitted a letter to the then branch manager, Jay Feldman, informing Mr. Feldman that he could no longer sustain a career performing the job Defendant hired him to do. (Id. at 4).  In the letter, Plaintiff also asked if his age was the reason the securities were not being

made available to him.  (Id.)  Defendant was born in 1947 and had turned fifty three years old on August 16, 2000.  (Id.)  Defendant also mailed copies of this letter to Mark B. Sutton, president, Barry J. Buchsbaum, executive vice president, Timothy J. Sennatt, senior vice president, and Francis McGrail, executive vice president of UBS.  (Id.)  This was the first time Plaintiff mentioned his the possibility of his age being a problem.  (Id.)

The letter was given to Defendant's legal department and on June 5, 2003, Pamela S. Poff, a senior vice president and deputy general counsel for Defendant, notified Plaintiff by letter that she would be conducting an investigation in the issues raised in his May 17, 2003 letter.  (Id.)  Ms. Poff informed Plaintiff that the investigation was complete in a letter dated September 2, 2003.  (Id.)  Her letter also referenced a conference call between Plaintiff, Mithcell Douglas, a senior human resources generalist, and Frank McGrail, the regional director.  (Id. at 4-5).  The letter referred to the concern Mr. McGrall expressed during that call over Plaintiff relying too heavily on one client and Plaintiff's need to diversify and expand his clientele.  (Id. at 5).  Ms. Poff also stated that Defendant had decided to leave the ARMs business.  (Id.)  Finally she stated that after reviewing the matter, there was no evidence of age discrimination in regard to Plaintiff and that if he disagreed with this conclusion he could pursue the matter with the "Forum for Alternate Issue Resolution" ("FAIR"), which was part of Defendant's employee relations department.  (Id.)

Plaintiff alleges that Ms. Poff's letter was the first time he had heard anything about Defendant exiting the ARMs business.  (Id. at 6).  Plaintiff contacted Stephanie Morse-Shamosh, first vice president of the employee relations department and the FAIR facilitator, and informed her that he had been denied the ARMs product and the fifteen year and twenty year mortgage

products.  (Id.)  Defendant's legal department and FAIR reviewed Plaintiff's complaints and on March 19, 2004, Taryn Shelton, a corporate vice president and assistant to Defendant's general counsel, contacted Plaintiff through email and informed him that after reviewing the matter, Defendant had determined there was no merit to Plaintiff's claim that he had been excluded from any product due to discrimination based on age or any other protected category.  (Id.)  Plaintiff was then placed on a "Business Development Plan" ("Plan"), which set forth goals for Plaintiff to open three new accounts in three months.  (Def. Br. at 4).  Defendant chose to retire instead of carry out this plan.  (Id.)  Plaintiff alleges Defendant knew Plaintiff could not successfully carry out the Plan and that the plan was a pretext to terminate him.  (Pl. Br. at 8).  Plaintiff further alleges he was forced to retire in July in order to avoid the loss of valuable benefits, which he would have lost if he was terminated or if he chose to resign.  (Id.)

Plaintiff filed his Complaint against Defendant on June 10, 2005, in the Superior Court of New Jersey.  Defendant removed the case to Federal Court on July 27, 2005.  On August 17, 2005, Plaintiff filed a motion to remand the case, which this Court denied on October 13, 2005. Defendant then filed this motion for judgment on the pleadings on December 2, 2005.

## II. DISCUSSION

### A. Standard for Judgment on the Pleadings under Rule 12(c)

Defendant moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  The standard for a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as that for a motion to dismiss under Fed. R. Civ. P. 12(b). See Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir.2004) ("There is no material difference in the applicable legal standards").  When

deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations in the Complaint must be taken as true and viewed in the light most favorable to the plaintiff.  See Worth v. Selden, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1988); Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984).  In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider only the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See Sutton v. United Airlines, Inc., 527 U.S. 471, 475 (1999).  All reasonable inferences, however, must be drawn in the plaintiff's favor.  See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir.1987).  Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims, or to permit inferences to be drawn that the elements exist.  See Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

### B. Plaintiff's Law Against Discrimination Claim

The New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et. seq. ("LAD"), exists to ensure that all New Jersey citizens enjoy the civil rights guaranteed by the New Jersey Constitution, especially in the work place.  N.J.S.A. § 10:5-2.1.  Because the overarching goal of

the LAD is to rid society of discrimination, the New Jersey Supreme Court has advised courts to liberally construe its provisions.  Dale v. Boy Scouts of America, 160 N.J. 562 (1999).  The LAD views the opportunity to obtain employment as a civil right and prohibits age discrimination in the work place.  Bergen Commercial Bank v. Sisler, 157 N.J. 188, 198 (1999), citing, Fuchilla v. Layman, 109 N.J. 319, 332 (1988).  Initially enacted in 1945, the LAD was amended to include "age" among protected characteristics in 1962.  Id.  Specifically, the LAD prohibits age discrimination in two sections.  Pursuant to N.J.S.A. 10:5-4, "[a]ll persons shall have the opportunity to obtain employment ... without discrimination ... because of ... age."  Under N.J.S.A. 10:5-12, it is unlawful for an employer to refuse to hire, employ, bar, discharge, or require a person to retire due to his or her age.

Defendant argues this Court should dismiss Plaintiff's LAD claims because Plaintiff failed to file his claims within the two year statute of limitations ("SOL") required by the statute.  All discrimination claims under the LAD are subject to a two year SOL.  Montells v. Haynes, 133 N.J. 282, 294-95 (1993).  However, there is a continuing violation exception to this rule, which allows recovery for the entire pattern of impermissible conduct if it rises to the level of a hostile work environment, despite the fact that some of the alleged conduct took place outside of the two year SOL.  Wison v. Wal-Mart Stores, 158 N.J. 263, 266 (1999).  This exception only applies in the context of hostile work environment claims and is not available if a plaintiff's claim is based up discreet discriminatory acts.  Id.  Discrete acts, such as termination of employment, failure to promote, or refusal to transfer, are easily identified and allow courts to quickly determine the date from which the two year SOL begins to run.  Hostile work

environment claims differ in that they arise over period time and involve repeated conduct. Nat'l R.R. Passenger Corp. v. Morgan 526 U.S. 101, 116 (2002). If a plaintiff alleges a defendant committed one or more discrete acts of discriminatory conduct, his or her cause of action would have accrued on the day of which those individual acts occurred. Sheppard v. Hunterdon Center, 174 N.J. 1, 21 (2002). However, if a plaintiff alleges a pattern, or series of acts, any one of which may not be actionable as a discreet act but when viewed cumulatively qualify as a hostile work environment, the cause of action would have accrued on the date on which the last discriminatory act occurred. Id., citing Morgan, 526 U.S. at 117.

Defendant claims the continuing violation exception does not apply because Plaintiff LAD claim is based on discrete acts of age discrimination. (Def. Br. at 6). On the other hand, Plaintiff argues the continuing violation exception applies to his case and that the timeliness of his claims should be determined under that framework. (Pl. Br. at 10). This Court is not prepared to make a ruling at this time on whether Plaintiff has alleged discrete acts of discrimination or a hostile work environment claim. Too many issues of fact exist surrounding this issue for the Court to determine whether Plaintiff's Complaint was timely filed. Defendant has failed to meet the standard required for this Court to grant a motion for judgment on the pleadings in regard to Plaintiff's LAD claims. Therefore, Defendant's motion is denied in respect to Plaintiff's LAD claims.

### C. Plaintiff's Tortious Interference Claims

In the Second Count of his Complaint, Plaintiff seeks to hold Defendant liable for tortuously interfering with his business relationship with Kearny. (Pl. Br. at 18). Defendant first

argues that Plaintiff's claims for tortious interference should be dismissed because Plaintiff's claims are untimely.  Pursuant to N.J.S.A. 2A:14-1:

> [e]very action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.

Under the statute, a six year SOL applies to claims for tortious interference with a contract. Defendant argues that a two year SOL should still apply due to the New Jersey Supreme Court's holding in Montells v. Haynes, 133 N.J. 282 (1993).  In Montells, the plaintiff sought to recover lost wages and had not included a lost-wage claim in her original complaint. Id. at 291.  The two year SOL had run before the plaintiff requested reimbursement for her lost wages, which she suffered due to her employer's discrimination.  Id.  The Court refused to apply the six year SOL set forth in N.J.S.A. 2A:4A:14-1, and found that a two year SOL applies to all LAD claims.

Plaintiff's did not file his claim for tortious interference under the LAD claim.  Plaintiff alleges that Defendant interfered with his relationship with Kearny and as a result of that interference, his relationship with Kearny was ruined.  (Plaintiff's Complaint ("Compl.") ¶¶ 8, 52).  Therefore, the six year SOL applies to Plaintiff's tortious interference claims and Defendant's motion for judgment on the pleadings regarding Plaintiff's tortious interference claims is denied.  The Court is not making a determination at this point as to when the six year SOL began to run because there are too many issues in dispute regarding the accrual of Plaintiff's

claims. It is also premature for the Court to determine whether Defendant may, or may not be, held accountable for allegedly interfering with Kearny and Plaintiff's relationship because too many factual issues are in dispute surrounding this issue as well.

### D. Plaintiff's Remaining Claims

Plaintiff's remaining claims include breach of implied contract, breach of covenant of good faith and fair dealing, negligent failure to advise, and fraud. (See Compl.). At this point, there are too many issues in dispute for this Court to grant Defendant's motion for judgment on the pleadings for any of these claims. Defendant has failed to meet the required standard and its motion is therefore denied.

### III. Conclusion

For the reasons explained above, Defendant's motion for judgment on the pleadings is denied. An appropriate Order accompanies this Opinion.


 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.


Date:       May 16, 2006
Original:   Clerk's Office
Cc:         All Counsel of Record
            The Honorable Mark Falk, U.S.M.J.
            File